**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SMIDTH & CO., | ) | Case No. 08-10516(KG) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | **Re: D.I. Nos. 131, 149, & 167** |

**MEMORANDUM OPINION[1]**

**BY: KEVIN GROSS, UNITED STATES BANKRUPTCY JUDGE**

The Court has confirmed a Plan of Liquidation in this case.[2]  Before the Court is the

Smidth & Co.'s (the "Debtor") Objection to Kullman Associates, L.L.C.'s ("Kullman" or the

"Claimant") proof of claim.  The Debtor based its objection on Kullman's untimely filing,

over six weeks after the Court Ordered Bar Date, or, in the alternative, pursuant to 11 U.S.C.

§502(e)(1)(B). Claimant contended that the Court should not disallow its claim based on

untimeliness under the doctrine of excusable neglect, and that §502(e)(1)(B) similarly does

not serve as a bar to their recovery.  The Court heard oral argument on February 17, 2009.

For the reasons set out in more detail below, the Court will disallow the proof of claim based

on the untimeliness of the filing.  It is therefore unnecessary to address the arguments under

§502.

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by
Federal Rule of Bankruptcy Procedure 7052.

[2] *See* Order Confirming Debtor's Plan of Liquidation Dated November 18, 2008 (D.I. 159).

## I. <u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## II. <u>STATEMENT OF FACTS</u>

The claim that the Debtor seeks to disallow centers around a certain piece of property located at One Kullman Corporate Center Campus, Lebanon, New Jersey, previously known as 23 Cherry Street (the "Property").  The Debtor owned the Property until 1982, when it sold it to Cincinnati Gear Company ("CGI"), who in 1998, sold it to Kullman.

CGI agreed, pursuant to an administrative consent order, to conduct an environmental investigation and remediation of the Property in December 1987.  CGI then filed suit against the Debtor seeking to recover costs associated with compliance with the administrative consent order.  After some negotiation, the Debtor agreed, in 1992, to contribute $1.8 million toward these compliance costs.  Despite selling the Property to Kullman in 1998, CGI continued investigating and remediating contamination at the Property until it liquidated in 2002.

On February 27, 2004, pursuant to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*, the New Jersey Department of Environmental Protection (the "NJDEP") issued a Directive to the Debtor and CGI to complete the cleanup and removal of the contamination on the Property.  The Claimant, Kullman, was not named as a responsible party in the Directive.  In response to the Directive, Debtor retained counsel to

investigate and possibly assert a claim against CGI. These actions led Debtor to discover that CGI had liquidated. They then retained an environmental consulting firm to review the history of the investigation and remediation of the property and to assess what work would be necessary to satisfy the Directive.

On July 29, 2004, the Debtor issued a demand letter to Kullman Industries Inc., which at that time was operating a manufacturing facility on the Property, regarding its participation in the environmental investigation. Although the demand letter to Kullman Industries expressly stated the Debtor's belief that Kullman Industries was the both the operator and the owner, the actual owner was Kullman, the Claimant, a separate entity.[3] Rather than clarifying that it did not own the Property, Kullman Industries negotiated to share equally with the Debtor the cost of investigating the Property, up to a total of $14,000. After the Debtor paid the full costs of the investigation, Kullman Industries did not reimburse Debtor for its share and filed for bankruptcy and liquidated in 2006.

As part of Kullman Industries' Chapter 11 case, it sold its business to Kullman Building Corp. F/K/A/ LI Acquisition Corp. in February 2006. This sale constituted a New Jersey Industrial Site Recovery Act, N.J.S.A. 13:1K-6 *et seq*. ("ISRA") "triggering event," which delegated Kullman to remediate the Property and file notice of this obligation with the

---

[3] Kullman Associates and Kullman Industries were in a Landlord-Tenant relationship, with Kullman Associates acting as the owner-landlord. Of note, both companies had the same principal, Robert Kullman.

NDJEP by February 12, 2006.[4]  Kullman did not do so until January 14, 2009, which, as described within, was after the Bar Dates in Debtor's bankruptcy case.

The Debtor filed a voluntary petition under Chapter 11 of Bankruptcy Code on March 19, 2008.  On April 24, 2008, this Court entered an order establishing July 1, 2008 as the final date and time for all persons and entities holding or asserting claims against the Debtor to file proofs of claim.  The order also established September 15, 2008 as the final date and time for all governmental units holding or asserting claims against the Debtor to file proofs of claim in this Chapter 11 case.  In accordance with this Court's order, the Debtor served notice of the Bar Dates upon all known parties holding actual or potential claims on April 29, 2008, and published the Bar Date in the national edition of the USA Today on May 2, 2008, to provide notice to all unknown parties holding actual or potential claims.  Debtor and Kullman agree that the Claimant did not receive actual notice from the Debtor as to the applicable Bar Dates.

On July 15, 2008, two weeks after the July 1, 2008 Bar Date, a representative from Kullman contacted the Debtor for the first time seeking information regarding compliance with the Directive in order to refinance the Property.  In response, the Debtor informed Kullman that it had filed for bankruptcy.  Although Kullman followed up the next day by requesting the docket number and location of the Debtor's bankruptcy, it did not mention that

---

[4]  ISRA is a transaction-triggered environmental remediation statute. Under ISRA, when there is a triggering event, such as the sale of a business, which effects ownership or operation of an industrial establishment, as defined in N.J.A.C 7:26B, Appendix A, the investigation and cleanup obligations of ISRA are triggered.

it had assumed responsibility for the remediation or that it may have a claim against the Debtor.

On August 22, 2008, five weeks after speaking with the Debtor about the Debtor's bankruptcy, and over six weeks past the Bar Date, Kullman filed a contingent and unliquidated[5] claim against the Debtor seeking contribution to the extent that Kullman is subsequently held responsible for clean up of the Property. This late filed proof of claim was the Debtor's first notice that Kullman was a potential claimant. Kullman did not file a Rule 9006(b)(1) motion for leave to file a late claim, leading to the somewhat unusual necessity of Debtor having to bring the matter to the Court's attention.

The NJDEP did not file a claim against the Debtor. On November 26, 2008, when Kullman suggested that the NJDEP file a late proof of claim, the NJDEP responded that it had decided not to pursue the claim due to limited resources. Kullman then requested a clarification of the NJDEP's position as to its claims against the Debtor regarding the Property. In response, on January 15, 2009, the NJDEP issued a letter to Kullman formally stating that it will not pursue the Debtor for remediation of the Property, and reserving its rights against all other parties, including Kullman Associates and Kullman Industries.

### III. DISCUSSION

### A. Kullman's Due Process Rights Were Not Violated

A necessary consideration in determining if the failure to meet the Bar Date set by this

---

[5] While the claim is currently unliquidated, in Kullman's draft proposal, the cost estimates range from $756,120 to $1,926,360.

Court prevents the allowance of Kullman's claim is whether the Debtor afforded the

Claimant the requisite due process. This determination turns on resolution of the status of

Kullman as either a known or unknown creditor.

Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedures authorizes courts to

set bar dates by which proofs of claim or interest may be filed.[6] This rule contributes to one

of the main purposes of bankruptcy law, securing, within a limited time, the prompt and

effectual administration and settlement of the debtor's estate.[7] Setting an outside limit for

the time to assert a right triggers due process concerns of which every court must be

cognizant.[8] This concern is resolved through notice: when a debtor provides proper notice

to its creditors, due process is satisfied, and a court can bar creditors from asserting claims.[9]

What qualifies as proper notice, however, is dependent upon whether the creditor is known

or unknown.[10] If a creditor is known, the debtor must provide actual notice of the bankruptcy

---

[6] *See* Fed. R. Bankr. P. 3003(c)(3).

[7] *See* Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995)(citing Katchen v. Landy, 382 U.S. 323, 328 (1966)).

[8] *See* City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 297 (1953)(". . . notice embodies a basic principle of justice – that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights").

[9] *See Chemetron*, 72 F.3d at 346 ("Due Process requires notice that is "reasonable calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response").

[10] *See id.* at 345-46.

proceedings, whereas if the creditor is unknown, notice by publication is sufficient.[11]

A known creditor is one whose identity is either known or "reasonably ascertainable" by the debtor.[12] Due process does not require "impracticable and extended searches,"[13] only "reasonably diligent efforts,"[14] focusing on the debtor's own books and records.[15] "An 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]."[16]

In the instant case, Kullman was unknown to the Debtor. The Debtor never transacted any business with Kullman; CGI owned and occupied the property for six years between the Debtor's and Kullman's respective ownership interests. Therefore, Kullman did not appear anywhere in the Debtor's books and records. Further, the Debtor never had any contact with Kullman Associates, only Kullman Industries, which they knew had liquidated prior to the commencement of these proceedings. In 2004, when the Debtor was negotiating with

---

[11] *See id.*; *see also City of New York*, 344 U.S. at 296 ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. . . . But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication").

[12] Tulsa Prof'l Collection Serv. v. Pope, 485 U.S. 478, 490 (1988).

[13] *Id.* (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 317-18 (1950)).

[14] *Id.* (quoting Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 (1983)).

[15] *See Chemetron*, 72 F.3d at 347. A recent opinion issued by the Third Circuit Court of Appeals affirmed this line of cases and their reasoning. *See* In re W.R. Grace & Co., No. 08-1044 (3d Cir. Mar. 11, 2009)(holding that debtors were not required to conduct title searches to locate prospective claimants as it would be beyond reasonably ascertainable standard).

[16] *See id.* at 346 (quoting *Mullane*, 339 U.S. at 317).

Kullman Industries regarding the investigation into the necessary steps for compliance with the Directive, Kullman Industries was the only party present, the only party with which the Debtor had an agreement, and which never once indicated that the true owner of the property was Kullman Associates, the Claimant.  Kullman was not listed as a party in the Directive. Additionally, Kullman never asserted or threatened to assert a claim against the Debtor prior to August 22, 2008, which was certainly after the Debtor was required to provide notice of the Bar Date.  Moreover, had Kullman Associates satisfied the requirements under IRSA in February 2006, the Debtor may have been put on notice as to its existence as well as its potential status as a claimant.  While the Debtor may have been able to ascertain that Kullman was the owner of the property through a public record search, due process does not require such an extensive investigation.  Moreover, even if it did, Kullman's claim is conjectural or future at best.  Therefore, the notice by publication that the Debtor provided was sufficient.

### B. Kullman's Late Filing Was Not the Result of Excusable Neglect

In the present case, Kullman seeks to have its failure to comply with Rule 3003(c)(3) the Bar Date forgiven as excusable neglect under Rule 9006(b)(1).  This Court holds that the acts of the Claimant do not qualify as excusable neglect and therefore will disallow Kullman's claim.

Rule 9006 of the Federal Rules of Bankruptcy Procedures allows computation, enlargement, and reduction of periods of time prescribed under other bankruptcy rules.[17] Specifically Rule 9006(b)(1) authorizes a bankruptcy court to permit a late filing if the failure to meet at deadline "was the result of excusable neglect."[18] Several courts, and specifically the Supreme Court of the United States and the Third Circuit Court of Appeals, have held that this Rule and Rule 3003(c)(3) should be read in conjunction: a court's ability to extend time under "excusable neglect" applies to the late filing of proofs of claim.[19]

The Supreme Court of the United States in *Pioneer Inventory Services v. Brunswick Assoc.* set out the authoritative test for determining whether a court may exempt a party's failure to meet a Bar Date for filing a proof of claim under "excusable neglect."[20] An equitable determination, the court must take into account the relevant circumstances, including: "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[21]

The first of these factors, the prejudice to the debtor, is also determined by a multi-

---

[17] *See* Fed. R. Bankr. P. 9006.

[18] *Id.*

[19] *See* Pioneer Inv. Serv. v. Brunswick Assoc., 507 U.S. 380 (1993); In re Vertientes, Ltd., 845 F.2d 57 (3d Cir. 1988).

[20] *See Pioneer*, 570 U.S. at 395.

[21] *Id.*

factor test set out by the Third Circuit Court of Appeals in *In re O'Brien Environmental Energy, Inc.*[22]  The *O'Brien* test establishes that a court must evaluate:

> the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims.[23]

Evaluating these tests in light of the facts of this case compels this Court to hold that Kullman's behavior does not qualify as excusable neglect.[24]  The first *Pioneer* factor, prejudice to the debtor, militates against finding excusable neglect.  First, it is impossible to determine Kullman's claim in relation to the rest of the estate, the first *O'Brien* factor, because at this time it is a contingent, unliquidated claim.  However, if the claim were in an amount closely reflecting that proposed by Kullman, it would represent a considerable portion (between 20% and 51%) of the assets available for distribution under the confirmed Plan.  This imposing portion would prejudice the Debtor.

Further, allowing the late claim would adversely impact the judicial administration of this case, the second *O'Brien* factor.  The Debtor has worked diligently towards the resolution of the case, resolving several issues.  Allowance of this claim provides more than

---

[22] 188 F.3d 116, 126 (3d Cir. 1999).

[23] *Id.*

[24] Of note, Kullman never filed a motion to enlarge the time for filing a proof of claim based on excusable neglect as required by Rule 9006(b)(1).

an additional financial burden on the estate, it also would necessitate extensive litigation to determine the validity of the claim and liquidate it.  The already burdened estate is unable to sustain such litigation.

Excusable neglect is also absent with respect to the third *O'Brien* factor, filing or confirmation of a plan with knowledge of the claim.  As demonstrated in the analysis above,[25] Kullman was an unknown creditor.  Therefore, the Plan in this case, which has already been filed and confirmed, did not contemplate a payment to Kullman.

The impact on the economic model upon which the Plan is based, the fourth *O'Brien* factor, is apparent to this court.  As stated above, the claim represented between 20% and 50% of the assets available in this case, an amount which would disrupt the Confirmed Plan's economic model.

Finally, the Court also finds that the final *O'Brien* factor, the opening of the floodgates to other late-filing creditors, supports a finding of prejudice.  If this Court were to allow this claim, other creditors might attempt to make similar arguments to overcome a late filing.

Applying the remaining *Pioneer* factors to the facts extant in this case also result in the conclusion that Claimant's neglect was not excusable.[26]  Specifically, the final *Pioneer*

---

[25] *See supra* Part III.A.

[26] The Debtor made an interesting point in their papers that if the Claimant did not know that it had a claim against the Debtor, then the Debtor could not have been expected to know and, therefore, could not have been expected to provide actual notice. If, on the other hand, Kullman knew it was a creditor of the Debtor's, their failure to file a timely proof of claim definitely does not constitute excusable neglect.

factor is good faith.  The Court finds that Kullman's failure to file a claim with the NJDEP

or take any action under IRSA, and only assert its rights in the final moments of this

bankruptcy case does not constitute good faith.  This Court is persuaded, as the Debtor

asserts, that Kullman did not comply with its obligations under IRSA because it did not want

to alert the NJDEP of its existence lest they too were found liable for the cleanup, and only

when they realized that the other potentially liable party was about to be discharged did they

make their interest known.  Good faith was not present, and this Court will disallow the

claim.

### CONCLUSION

For the forgoing reasons, this Court holds that Kullman's late-filed claim will be

disallowed because it failed to timely file its claim and such failure does not qualify as

excusable neglect.  The Court's unequivocal disallowance of the claim makes it unnecessary

to reach the arguments raised under §502.

Dated:  March 16, 2009

_____

Kevin Gross, U.S.B.J.